| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | **FOR PUBLICATION** |
| In re: | Chapter 11 |
|     VELO HOLDINGS INC., et al., | Case No. 12-11384 (MG) |
|                                    Debtors. | Jointly Administered |
| VELO HOLDINGS INC., et al., | |
|                                    Plaintiffs, | |
|                     v. | Adv. Pro. No. 12-1564 (MG) |
| PAYMENTECH, LLC, | |
|                                    Defendant. | |

**MEMORANDUM OPINION AND ORDER SUSTAINING PLAINTIFFS' OBJECTION
TO DEFENDANT'S REQUEST FOR PRODUCTION OF DOCUMENTS**

*A P P E A R A N C E S:*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
*Special Counsel for the Debtors*
51 Madison Avenue, 22nd Floor
New York, New York 10010
By:    Susheel Kirpalani, Esq.
          James C. Tecce, Esq.
          Stephen Broome, Esq.

WILKIE FARR & GALLAGHER LLP
*Counsel for Barclays Bank PLC, as First Lien Prepetition Agent and DIP Agent*
787 Seventh Avenue
New York, New York 10019
By:    Margot B. Schonholtz, Esq.
          Ana M. Alfonso, Esq.

LOWENSTEIN SANDLER PC
*Counsel for Paymentech, LLC*
1251 Avenue of the Americas, 18th Floor
New York, New York  10020

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
By:   Norman N. Kinel, Esq.
      John K. Sherwood, Esq.
      Terence D. Watson, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

Velo Holdings Inc. and its affiliated debtors ("Vertrue" or "Velo") and Paymentech, LLC ("Paymentech") continue to dispute the application of common interest doctrine as applied to certain documents and communications otherwise protected by attorney-client privilege and attorney work product.  The documents and communications at issue were created or exchanged between Vertrue and Barclays Bank PLC, as administrative agent (the "Agent") for Vertrue's first lien lenders (the "First Lien Lenders"), and their respective counsel.  Paymentech seeks production of documents and testimony about the communications, most of which relate to the development of legal strategy to prevent Paymentech's termination of credit card processing agreements.  The Court previously addressed some of the issues in this discovery dispute in an Order entered on May 22, 2012, overruling Vertrue's objections in part, and ordering further proceedings before addressing the remaining objections.  ("May 22 Order"; ECF Doc. # 28.)  For the reasons explained below, the Court **SUSTAINS** Vertrue's remaining objections based on the common interest doctrine.

BACKGROUND

Vertrue commenced this adversary proceeding against Paymentech seeking to enjoin termination of credit card processing agreements between Vertrue and Paymentech.  On April

25, 2012, the Court granted Vertrue a temporary restraining order preventing Paymentech from terminating the processing agreements, and setting the matter down for a preliminary injunction hearing. (ECF Doc. # 12.) During discovery in advance of the preliminary injunction hearing, Vertrue and the Agent have raised issues relating to attorney-client privilege, work product protection, and a possible common legal interest between the Agent and Vertrue that would protect otherwise privileged documents from waiver because they were shared between Vertrue and the Agent. In response to a discovery request from Paymentech, Vertrue objected to certain discovery, asserting attorney-client privilege, work product protection, and the common interest doctrine.

In the May 22 Order, the Court overruled Vertrue's objections to Paymentech's discovery requests seeking discovery of all documents and communications between Vertrue and its attorneys, on the one hand, and the Agent and First Lien Lenders and their attorneys, on the other hand, that took place before April 2, 2012, relating to (i) financial results, liquidity issues, restructuring proposals, a pre-negotiated bankruptcy case, (ii) Vertrue's November 14, 2011 meeting with Paymentech and Visa and (iii) any threats to terminate the processing agreements.[1]

---

[1]    The May 22 Order provided, in relevant part:

> According to the Debtors, "[o]n November 17, 2011, Vertrue held a confidential meeting with the secured lenders . . . to discuss financial results and liquidity issues and to present the financial restructuring proposal that included a pre-negotiated bankruptcy case." Velo further explains that, at the November 17 meeting, it reported to the lenders the results of its November 14, 2011 meeting with Visa and Paymentech. Velo's description of the November 17 meeting makes clear that these discussions between a borrower and its lenders were business discussions not protected by attorney-client privilege or work product protection. Velo and the lenders continued to negotiate the terms of a proposed restructuring and on April 2, 2012, the First Lien Lenders and the Debtors entered into a Protocol outlining the terms of a proposed restructuring. Before entering into the Protocol, the interests of Velo and the First Lien Lenders were not aligned insofar as an agreement on restructuring was concerned. Velo cannot shield from discovery documents and communications that might otherwise have been subject to a claim of privilege that were shared between Velo and the First Lien Lenders, or their respective counsel, before the Protocol was reached. Velo has failed to carry its burden of establishing the existence of

3

The Court ordered that responsive documents relating to these subjects be produced on or before May 26, 2012 at 5:00 p.m.

According to the declaration of Lorraine DiSanto, dated May 17, 2012 (the "DiSanto Decl.," ECF Doc. # 24), "[a]fter Chase Paymentech's January 20, 2012 letter to Vertrue advising that Chase Paymentech planned to try to terminate the processing agreements on April 20, 2012, Vertrue and the Agent, with their respective attorneys and financial advisors, worked together to develop a litigation strategy to prevent Chase Paymentech from impermissibly terminating the processing agreements." DiSanto Decl. ¶ 7. With respect to documents or discussions between counsel for Vertrue and the Agent after January 20, 2012 about developing a legal strategy to prevent termination of the processing agreements, the May 22 Order concluded that such communications *may* be protected from discovery by attorney work product and common interest protection, but it was not possible for the Court to resolve the issues on the record before the Court. Therefore, the Court required Vertrue to provide a privilege log identifying each document Vertrue claims is privileged.[2] The Court also permitted the parties to take limited

---

a common interest privilege with respect to documents and communications regarding any restructuring proposals until April 2, 2012, when the Protocol was entered. Until that date, it was not "objectively reasonable for [Velo] to believe that the communication was confidential." *In re Quigley Co., Inc.*, No. 04-15739(SMB), 2009 Bankr. LEXIS 1352, at *9 (Bankr. S.D.N.Y. April 24, 2009). Factual presentations or discussions before April 2, 2012 about Paymentech's threats to terminate the processing agreements with Vertrue stand on no stronger footing.

May 22 Order at 4-5.

[2]   Vertrue had not submitted a privilege log when the common interest doctrine issue was initially presented to the Court. FED. R. CIV. P. 45(d)(2)(A) requires a person withholding documents under a claim of privilege to "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Without knowing the dates of the communications, authors, addressees, who received copies, and the subject matter, and an *in camera* review of documents, if necessary, it is impossible to know whether the documents or communications were subject to attorney-client privilege or work product protection in the first instance, and, if so, whether the result is altered by any subsequent communications between Vertrue and its counsel, and the lenders or their counsel. After Vertrue provided a privilege log, Paymentech elected not to challenge the existence of privilege in the first instance.

deposition discovery addressing any disputed factual issues concerning Vertrue's assertion of privilege, and to submit supplemental letter briefs and evidence addressing the privilege issues.

The parties submitted the additional letter briefs and evidence. While the May 22 Order provided that the parties could submit any disputed documents for *in camera* review, counsel advised the Court in a telephone hearing on June 5, 2012 that *in camera* review of documents is unnecessary.[3] Paymentech has agreed that prior to disclosure to the Agent, the documents were protected from disclosure by attorney-client privilege or attorney work product; Paymentech contends, however, that disclosure of these communications to the Agent had the effect of waiving the applicable privilege. Vertrue contends and Paymentech disputes that the so-called common interest doctrine applies and continues to protect the documents (and any related communications) from discovery.

## DISCUSSION

Paymentech argues that the common interest doctrine does not apply for three reasons. First, Paymentech claims that the interest shared between Vertrue and the Agent was purely commercial and that such a shared interest cannot create a common legal interest. Second, Paymentech argues that neither Vertrue nor the Agent had an expectation of confidentiality at the time of the communications at the center of this dispute. Third, Paymentech argues that the common interest doctrine is inapplicable because none of the communications were made in anticipation of litigation. Based on the facts established in the declarations and deposition excerpts submitted to the Court, each of Paymentech's arguments fails.

The common interest doctrine is "an exception to the general rule that voluntary disclosure of confidential, privileged material to a third-party waives any applicable privilege."

---

[3]   The parties agree that the current dispute relates to 291 documents listed in Vertrue's privilege log asserting common interest privilege, and to possible deposition examination relating to the subject of these communications.

*HSH Nordbank AG N.Y. Branch v. Swerdlow*, 259 F.R.D. 64, 71 (S.D.N.Y. 2009) (Lynch, J.) ("*Nordbank*"). As the court held in *Nordbank*, "[d]emonstrating the applicability of the common interest doctrine requires a two-part showing: (1) the party who asserts the rule must share a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought must have been designed to further that interest." *Id.* (internal quotation marks omitted). "The doctrine is limited to situations where multiple parties are represented by separate counsel that share a common interest about a legal matter." *In re Quigley Co., Inc.*, No. 04-15739(SMB), 2009 Bankr. LEXIS 1352, at *8 (Bankr. S.D.N.Y. April 24, 2009) ("*Quigley*"). "As in all claims of privilege arising out of the attorney-client relationship, the proponent must establish that the communication was given in confidence, and under circumstances that made it objectively reasonable for the client to believe that the communication was confidential." *Id.* at *9 (citing *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989)).

The rationale for the doctrine is that it "permits persons who have common interests to coordinate their positions without destroying the privileged status of their communications with their lawyers." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76 cmt. b. "The communication must relate to the common interest, which may be either legal, factual, or strategic in character. The interests of the separately represented clients need not be entirely congruent." *Id.* cmt. e. Clients with common interests may also have conflicting interests without losing the benefit of the common interest doctrine where the communications they seek to protect relate to their common interests. *See Eisenberg v. Gagnon*, 766 F.2d 770, 787-88 (3d Cir. 1985).

6

The common interest doctrine applies to both attorney-client communications and work product materials. *Am. Eagle Outfitter, Inc. v. Payless Shoesource, Inc.*, No. CV 07-1675 (ERK) (VVP), 2009 WL 3786210, at *3 (E.D.N.Y. Nov. 12, 2009). In this case, one or both of attorney-client privilege and work product protection may be involved at different points in time, but each document or communication must be separately evaluated to determine whether disclosure is shielded by attorney-client privilege or work product protection. *See Niagara Mohawk Power Corp. v. Megan-Racine Assocs., Inc. (In re Megan-Racine Assocs., Inc.)*, 189 B.R. 562, 573 (Bankr. N.D.N.Y. 1995) ("The parties asserting the privilege must also demonstrate that each communication was made in the course of the joint-defense effort and was designed to further that effort.").

In this case Paymentech acknowledged in the June 5, 2012 telephone hearing that the documents at issue were, in the first instance, protected from discovery by attorney-client privilege or attorney work product. It is the subsequent sharing with the Agent of documents and communications of otherwise protected information that is the focus of the parties' dispute.

**A.  The Common Interest Between Vertrue and the Agent is Not Purely Commercial**

Paymentech insists that Vertrue and the Agent must share identical legal interests, but that is not the case. Parties asserting a common interest need only share a common interest about a legal matter. *Schwimmer*, 892 F.2d at 243. *See also Nordbank*, 259 F.R.D. at 70-73. Indeed, the interests of the parties asserting a common interest need not be universally congruent. *See Grand Jury Subpoena Duces Tecum Dated Nov. 16, 1974*, 406 F. Supp. 381, 392 (S.D.N.Y. 1975) ("a joint defense may be made by somewhat unsteady bedfellows"); *Megan-Racine*, 189 B.R. at 572 (concluding that doctrine can protect communications between two parties even where a lawsuit between the two parties is foreseeable).

A "key consideration" is that the nature of the interest "be legal, not *solely commercial*," as Paymentech argues is the case here. *Nordbank*, 259 F.R.D. at 73 (citing *Struogo v. BEA Assocs.*, 199 F.R.D. 515, 520 (S.D.N.Y. 2001) (emphasis added). As to this point, Paymentech cites cases that are inapposite. In *Bank of America, N.A. v. Terra Nova Insurance Co. Ltd.*, 211 F. Supp. 2d 493, 497 (S.D.N.Y. 2002), Magistrate Judge Gorenstein rejected an argument that the common interest doctrine applied when the asserted common interest was "the structuring and effectuation of the letter of credit agreement and the supporting reinsurance policies." (internal quotation marks omitted.) The court noted that despite the fact that the parties engaged in a "collaborative effort . . . the mere fact that the parties were working together to achieve a commercial goal cannot by itself result in an identity of interest between the parties." *Id.* (internal quotation marks omitted).[4]

Similarly, in *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995), the court addressed the issue "whether the doctrine can be stretched to apply to communications between entities that have parallel interests but are not actively pursuing a common legal strategy." The court also wrote that the common interest doctrine does not "encompass a joint business strategy which happens to include as one of its elements a concern about litigation." *Id.*

The facts presented by the relationship between Vertrue and the Agent are distinguishable from those of *Bank of America* and *Bank Brussels*. First, the interest claimed as common does not encompass the entire commercial relationship or "joint business strategy" between Vertrue

---

[4] In *Sokol v. Wyeth, Inc.*, No. 07-Civ.-8442 (SHS) (KNF), 2008 WL 316662, at *8 (S.D.N.Y. Aug. 4, 2008), the court found no common interest between two parties where an attorney hired by the plaintiff, who had also been retained by a third party, mentioned the third party "occasionally, [and] for the purpose of updating [the plaintiff] on its status, not to develop a common legal strategy." The facts of *Sokol* are plainly distinguishable from the facts of this case.

8

and the Agent; rather, Vertrue, the Agent, and their respective counsel, shared a common legal interest in "developing a strategy to prevent the termination of the company's . . . merchant processing agreements with . . . Paymentech." (ECF Doc. # 33 at 2.) In November of 2011, Vertrue and the Agent began discussions regarding how to implement an effective restructuring of Vertrue, a shared interest that was commercial in nature. The May 22 Order overruled Vertrue's assertion of common interest doctrine with respect to these commercial discussions. But the evidence clearly shows that after receipt of the January 20, 2012 letter, in which Paymentech informed Vertrue of its intent to terminate the processing agreements,[5] Vertrue and the Agent promptly began to formulate a legal strategy aimed at preserving these agreements. While grounded in the parties' commercial relationship, after January 20, 2012, Vertrue and the Agent shared a common legal interest in crafting a strategy to prevent the termination of the processing agreements.

### B. There Was an Expectation of Confidentiality Between Vertrue and the Agent

Paymentech also argues that "[n]either Vertrue nor the Agent had an objectively reasonable expectation of confidentiality with respect to any exchange of information concerning any litigation strategy relating to Paymentech." (ECF Doc. # 34 at 2.) Paymentech insists that the parties relied only upon the Restructuring Confidentiality Agreement, entered on November 28, 2011, which could not create a reasonable expectation of confidentiality because the Restructuring Confidentiality Agreement did not specifically provide for confidentiality of

---

[5] Whether the January 20, 2012 letter terminated the Processing Agreements or evidenced Paymentech's intent to terminate the Processing Agreements is still an issue in dispute in this case. The Court's statements regarding this letter are not to be construed as conclusions regarding the alleged legal effect of the January 20, 2012 letter from Paymentech to Vertrue.

information shared relating to developing a legal strategy to prevent termination of the Processing Agreements.[6]

Paymentech relies too heavily on the Restructuring Confidentiality Agreement as the only possible source of a common legal interest between the Agent and Vertrue. Courts in this circuit have routinely held that a writing is unnecessary to establish a common legal interest. *See, e.g. Nordbank*, 259 F.R.D. at 72 (citing *Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 415 (S.D.N.Y. 2004); *Lugosch v. Congel*, 219 F.R.D. 220, 237 (N.D.N.Y. 2003); *Doctor's Assocs., Inc. v. QIP Holder LLC*, No. 3:06 Civ. 1710, 2009 WL 1683628, at *6 (D. Conn. Feb. 26, 2009)). Indeed, the evidence establishes that at the start of the meetings between the Agent and Vertrue, announcements were made about the confidential nature of the meetings. (McLean Tr. 21:3-12, ECF Doc. # 34, Ex. A.) A written agreement is neither necessary to establish a common legal interest, nor to establish an expectation of confidentiality. The Court finds that the Agent and Vertrue both had an expectation of confidentiality at the time the disputed communications were made.

### C. The Communications Were Made in Anticipation of Litigation

"[I]t is not necessary for litigation to be in progress for the common interest doctrine to apply." *Bank Brussels*, 160 F.R.D. at 447 (citing *Schwimmer*, 892 F.2d at 244). However, "New

---

[6] The May 22 Order concluded that the Restructuring Confidentiality Agreement did not shield information shared between Vertrue and the Agent on the basis of common interest doctrine:

> One thing that should be clear is the fact that Velo and the First Lien Lenders entered into the Restructuring Confidentiality Agreement on November 28, 2011 does not mean that all information shared between them is protected from discovery by attorney-client privilege or work product protection. The effect of the Restructuring Confidentiality Agreement is that the First Lien Lenders could not further disclose confidential information provided by Velo. But that agreement cannot create privilege where none exists, or limit discovery by Paymentech in the context of this adversary proceeding, unless specific documents or communications are protected by attorney-client privilege or work product.

May 22 Order at 4.

York law appears to restrict the doctrine to communications with respect to legal advice 'in pending or reasonably anticipated litigation.'" *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 252 F.R.D. 163, 171 (S.D.N.Y. 2008) (quoting *Aetna Cas. & Sur. Co. v. Certain Underwriters at Lloyd's London*, 676 N.Y.S.2d 727, 732 (N.Y. Sup. Ct. 1998)). The requirement that the legal advice must be with respect to pending or reasonably anticipated litigation is not present under federal common law. *Nordbank*, 259 F.R.D. at 71 n.9.

While the parties have not made any express statements regarding choice of law, the distinction is irrelevant here because the communications between the parties were made in anticipation of litigation. The fact that the Agent is not currently a party to the litigation before this Court does not preclude the common interest doctrine from application.[7] *See id.* (holding that the facts demonstrated that the plaintiff and "the non-party lenders had, in fact, reasonably anticipated litigation at the time the communications were made"). Under either New York or federal law, communications between Vertrue and the Agent may still be protected under the common interest doctrine despite the Agent's non-party status.

### D. The Parties Had a Common Legal Interest After April 2, 2012

On April 2, 2012, the First Lien Lenders and Vertrue entered into a Protocol outlining the terms of a proposed restructuring. In the May 22 Order, the Court held that prior to April 2, 2012, it was not objectively reasonable for Vertrue to believe that its communications with the Agent were confidential, except as related to legal strategy to prevent termination of the processing agreements. (May 22 Order at 5.) But after the parties entered into the Protocol— providing that the First Lien Lenders would credit bid for some of Vertrue's assets, and that the

---

[7] Initially, Paymentech disputed the Agent's right to be heard in this litigation absent formal intervention. The issue was resolved with an agreement permitting the Agent's participation to a limited extent without formal intervention. The Agent's counsel has appeared and been heard at each hearing in the case.

Court would oversee an auction process for the remainder of Vertrue's business in which the First Lien Lenders would also serve as stalking-horse bidder—Vertrue and the Agent held a common legal interest with regard to restructuring proposals. Further, after April 2, 2012 it was objectively reasonable for both Vertrue and the Agent to believe that the communications between the parties would be confidential. *See Quigley*, 2009 Bankr. LEXIS 1352, at *9. Accordingly, the Court concludes that after April 2, 2012, Vertrue and the Agent had a common legal interest protecting from discovery otherwise privileged documents and communications relating to "financial results, liquidity issues, restructuring proposals, pre-negotiated bankruptcy, and any threats to terminate the processing agreement."[8]

## CONCLUSION

As was the case in *Quigley*, "the commonality or lack of commonality" of the interest between Vertrue and the Agent "depends on which interest you consider." *Quigley*, 2009 Bankr. LEXIS 1352, at *13. In November 2011, the common interest of Vertrue and the Agent was primarily, if not purely, commercial. However, after Vertrue received the January 20, 2012 letter, the parties had a common legal interest in preventing termination of the processing agreements. The documents and communications shared between the parties made in furtherance of this interest were made in reasonable anticipation of litigation with Paymentech, and the evidence establishes that the parties reasonably expected that the communications would remain confidential.

After the Protocol was entered on April 2, 2012, the parties' common legal interests expanded beyond simply preventing termination of the processing agreements. From that time

---

[8]   The documents and communications must, of course, relate to the rendering or receipt of legal advice to the client (or those sharing the common legal interest), intended to be confidential and, in fact, otherwise remaining confidential. Communications of information—even confidential information—exclusively for a business purpose are not protected.

12

forward, the parties had a common legal interest in effectuating a successful restructuring of Vertrue's business. To the extent documents or communications were otherwise privileged, the common interest doctrine prevented privilege from being lost because documents or communications were shared between Vertrue and the Agent, and their respective counsel.

Accordingly, the Court **SUSTAINS** the balance of Vertrue's objections to the disputed discovery based on common interest privilege.

**IT IS SO ORDERED.**

Dated:     June 12, 2012
           New York, New York

                                                    **/s/Martin Glenn**
                                                    MARTIN GLENN
                                                    United States Bankruptcy Judge